IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL HENRY SMITH,                      )

                Plaintiff,        )

v.                                        )        CIVIL ACTION NO. 10-00270-CB-M

BP AMERICA, INC., et al.                  )

             Defendants.    )

<u>**OPINION**</u> and <u>**ORDER**</u>

     In this lawsuit, plaintiff Michael Henry Smith alleges that he was injured while working for defendant BP America, Inc. ("BP") as part of the clean-up effort following the Deepwater Horizon oil disaster in the Gulf of Mexico.  Smith, who is proceeding *pro se*, asserts various claims against BP.  Smith has filed a motion for partial summary judgment seeking a determination that BP was, in fact, his employer. (Doc. 82.) BP disputes that it was Smith's employer and has filed a motion seeking summary judgment in its favor on all claims.  (Doc. 88.) For reasons set forth below, Smith's motion for partial summary judgment is denied, and the BP's motion for summary judgment is granted.[1]

---

[1] The parties have also filed various motions related to summary judgment briefing and evidentiary submissions. Plaintiff's motion for extension of time (Doc. 93) is **moot**.  Plaintiff's motion to merge the pleadings (Doc. 94), which is essentially a request for the Court to consider both motions for summary judgment simultaneously, is also **moot.**  Defendant's motion to strike Plaintiff's affidavit (Doc. 97) has been rendered **moot** by Plaintiff's motion to amend/correct affidavit testimony (Doc. 100), which is **granted**.  Plaintiff's motion to strike Defendant's evidentiary submissions (Doc. 99) and Plaintiff's motion to strike Defendant's summary judgment opposition (Doc. 103) are **denied**.

**Findings of Fact**

For three days--from May 10, 2010 through 12, 2010--the plaintiff, Michael Henry Smith, worked in Orange Beach, Alabama on the oil spill recovery following the Deepwater Horizon disaster. Smith heard a stranger at the post office talking about a labor or marine consulting firm hiring for BP.  (Def.'s Ex. B., Smith Dep. 96, Doc 89-1.)  Smith went to Marine Contracting, was hired and was sent to 40 hours of "Hazwhopper training."  (*Id.* 97.)

At the time in question, Marine Contracting Group, L.L.C. ("Marine Contracting") was hiring workers for Oil Recovery Co., Inc. ("ORC") to work on the oil spill cleanup.  (Def.'s Ex. C, Gartman Dep. 20, Doc. 89-3.)  Following his training, Smith reported for each day of work at ORC's office in Mobile and traveled to Orange Beach with Matt Palmer in a pickup truck towing a "jet boat."  On May 12, 2010, Smith was in the boat with Palmer checking or deploying booms. While trying to pull the boat's anchor up, Smith slipped overboard but immediately got back on board the boat.[2]  Smith was fired following this incident.

On May 25, 2010, Smith filed this lawsuit against BP and Moran Environmental Recovery.[3]  In his complaint, Smith asserts three claims:  (1) a negligence claim under the Jones Act; (2) a claim for maintenance and cure under general maritime law; and (3) a claim for unseaworthiness under general maritime law.

---

[2]In an email Smith sent to ORC that same day, he described the incident as follows: "I gently slid over the side [of the boat].  My cap and glasses stayed right on my head.  I got up on the boat and continued working.  I never complained to anyone about it." (Def.'s Ex. D, Doc. 89-4.)

[3] Smith's claims against Moran Environmental Recovery have been dismissed pursuant to a settlement agreement.  (Docs. 67 & 70.)

**Summary Judgment Analysis**

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).   Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*

Where the moving party also has the burden of proof at trial,

> that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)  (citations and internal quotation marks omitted).

In this case, the Plaintiff, Michael Henry Smith, seeks summary judgment with respect to an issue for which he bears the burden of proof at trial (i.e., that BP was his employer).  To succeed on his motion, Smith must come forward with uncontroverted evidence that BP was his employer.  On the other hand, BP seeks summary judgment on claims for which it *does not* bear the burden of proof.  Therefore, to survive BP's summary judgment motion, Plaintiff must come forward with evidence to demonstrate the existence of a triable issue of fact with respect to each challenge raised by BP.

**Legal Analysis**

> ***Plaintiff's Jones Act and Maintenance and Cure Claims Fail for Lack of Evidence that BP was Plaintiff's Employer***

One element essential to recovery under both maintenance and cure and the Jones Act is the existence of an employment relationship between plaintiff and defendant.  "A seaman's right to maintenance and cure is implicit in the contractual relationship *between the seaman and his employer*."  *Pelotto v. L&N Towing  Co.*, 604 F.2d 396, 400 (5th Cir. 1979) (emphasis added).  Similarly, the Jones Act permits "[a] seaman injured in the course of employment . . . to bring a civil action [for negligence] . . . against [his] *employer*."  46 U.S.C. § 30104 (emphasis added).  Though Smith cites Alabama worker's compensation law for the proposition that BP should be considered a "special employer," the existence of an employer-employee relationship under the Jones Act and general maritime law is determined by federal law.

> The employer need not be the owner of the vessel, and independent contractors may be liable under the Act.  Further, a third person who borrows a worker may become the employer if the borrowing employer assumes sufficient control over the worker. *Control is the critical inquiry*.

*Volyrakis v. M/V Isabel*, 668 F.2d 863 (5th Cir. 1982) (emphasis added), *overruled on other grounds*, *In re Air Crash Disaster*, 821 F.2d 1147 (5th Cir. 1987).   The same principles are applicable to determine whether an employment relationship exists for purposes of maintenance and cure.  *Mahramas v. American Export Isbrantsen Lines, Inc.*, 475 F.2d 165, 171 (2nd Cir. 1973) ("right of control is one of the most important factors").  In deciding the issue, the Court looks at "payment, direction, and supervision of the employee" and whether the defendant "had the power to hire and fire." *Id.*  "The control which is exercised must be substantial; the mere possibility of some control over the actions of an employee will not suffice."  *Id.*

The evidence establishes, first, that Smith was not hired—either directly or indirectly— by BP.  Smith was hired by Marine Contracting to work for ORC and was paid by Marine

4

Contracting.  ORC was an independent contractor working for BP. There is no evidence that  BP had ability to hire or fire ORC employees or that BP supervised or controlled ORC employees.

To support his claim that he was a BP employee, Smith has proffered his own sworn declaration (Doc. 102) and a copy of a Master Service Contract between BP and ORC dated several months *after* the time of the incident.  Regarding his employment, Smith states:  "I swear that it was my personal observation that I was a seaman working on a vessel in the employ of BP and I was an employee of BP in that same capacity." (Smith Decl., *id*., ¶ 2.) That statement is merely a conclusion, and the object of [Fed. R. Civ. P. 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. . . [but to] to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  *Lujan v. National Wildlife Fund,* 497 U.S. 871, 888 (1990).  Smith's affidavit provides no facts to support his conclusion that he was employed by BP, nor does the Master Service Contract. That contract was not in existence at the time of Plaintiff's injury.[4] Even if it had been in existence, the contract expressly *negates* any claim that BP had direction or control over ORC's work.[5]

_____

[4] Because of the confusion created by the parties' citation of this contract, the Court entered an order requiring BP to provide a copy of the Master Service Contract for the relevant time period and/or to inform the Court whether such a contract was in existence at the time of Plaintiff's injury.  In response (Doc. 111), BP states that no Master Service Contract was in effect at the time and that services for the relevant time period were performed pursuant to ORC's standard rate schedule agreement.

[5] The Master Service Contract  states that ORC is "an independent contractor," in charge of "the performance of the details of the work and responsible for the work." BP had "no direction or control" over ORC in its work performance. Further, ORC was "to furnish at its own expense, cost and discretion any and all necessary labor, personal protective equipment, machinery, equipment, tools, transportation and whatever else is necessary in the performance and completion of the work." (Pl.'s Ex, Doc. 91, §§ 7.01, 7.02 & 7.03.)

***Plaintiff's Unseaworthiness Claim Also Fails***

Smith does not address this claim in his summary judgment response, and his sworn declaration contains only conclusory assertions of unseaworthiness.[6] It has long been recognized that a seaman has a right to recover from the *shipowner* for injuries caused by an unseaworthy ship, i.e., one that is not reasonably fit for its intended purpose. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 543 (1960). As BP points out, there is no evidence that it was the owner of the vessel upon which Plaintiff was allegedly injured. In fact, the only evidence on this issue tends to show that BP was *not* the shipowner.[7] Plaintiff must also prove that "the unseaworthy condition of the vessel was the sole or proximate cause of his injury." *Ferrara v. AV Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996) (emphasis added). Plaintiff has failed to identify the unseaworthy condition of the boat or any injuries he has suffered, much less any connection between the two that would establish proximate cause.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion for partial summary judgment be and hereby is **DENIED** and that Defendant's motion for summary judgment be and hereby is **GRANTED**.

**DONE** this the 21st day of March, 2012.


*s/Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[6] Plaintiff states in his declaration: "I was working on the Jet Boat and due to its unseaworthiness, I fell overboard and I was injured." (Doc. 102 ¶ 3.) As discussed, *supra*, conclusory allegations are insufficient to create an issue of fact.

[7] According to Plaintiff, the "jet boat" on which he was allegedly injured was kept at the ORC offices in Mobile and hauled to Orange Beach each day.